UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| EDWARD P. BLACKCLOUD, | ) | CIV. 12-4168-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| DENNIS KAEMINGK, Secretary of Corrections, South Dakota Department of Corrections, in his official capacity; DARIN YOUNG, Warden, South Dakota State Penitentiary, in his official capacity; BOB DOOLEY, Associate Warden, Mike Durfee State Prison, in his official capacity; JEFF NEILL, Case Manager, South Dakota State Penitentiary/Jameson Prison, in his individual and official capacities; LT. SOMMERS, Special Security, South Dakota State Penitentiary, in his individual and official capacities; SGT. CHRISTENSEN, (DHO) Sargent, Mike Durfee State Prison, in his individual and official capacities; SGT. WICKETT, (DHO) Sgt., Mike Durfee State Prison, in his individual and official capacities; LT. SESTAK, Officer in Charge, Mike Durfee State Prison, in his individual and official capacities; TAMMY DOYLE, Unit Manager, Mike Durfee State Prison, in her individual and official capacities; KIM LIPPENCOTT, Unit Case Worker, Mike Durfee State Prison, in her individual and official capacities; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | |
|---|---|
| TAMMY DEJONG, Unit Coordinator, Mike Durfee State Prison, in her individual and official capacities; KEITH TOMKINS, Staff Representative, Mike Durfee State Prison, in his individual and official capacities; RANDY STEVENS, Property Officer/Mailroom Officer, Mike Durfee State Prison, in his individual and official capacities, <br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

On October 2, 2012, plaintiff Edward P. Blackcloud, appearing *pro se*, filed a complaint against the defendants alleging various violations of his constitutional rights. (Docket 1).

Pending before the court is defendants' motion for summary judgment filed on November 15, 2013. (Docket 34). Defendants also filed a statement of undisputed material facts. (Docket 36). Plaintiff did not file a response to either the defendants' motion for summary judgment[1] or statements of material facts.[2]

---

[1] On January 6, 2014, the court issued a show cause order to Mr. Blackcloud requiring him to show good cause why the court should not grant defendants' motion for summary judgment. (Docket 39). On January 7, 2014, the order was sent to the address provided by plaintiff. On January 21, 2014, the mail was returned as undeliverable. (Docket 40). Plaintiff has not otherwise responded to defendants' motion or the court's order to show cause.

[2] "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; or (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e).

**BACKGROUND**

On November 29, 2010, in Pennington County, South Dakota, Mr. Blackcloud was sentenced to serve a term of five years incarceration with two years suspended. (Docket 36 at ¶ 1). Following his sentence and incarceration, Jeff Neill conducted an assessment of Mr. Blackcloud's security risk. Id. at ¶ 2. The assessment included a review of Mr. Blackcloud's judgment of conviction, criminal history and an interview. Id. During the interview, Mr. Blackcloud stated he had been disciplined while at the Pennington County jail. Id. Based on this admission, Mr. Neill contacted the jail to ask for the disciplinary reports. Id.

Mr. Neill received information from Pennington County Jail that Mr. Blackcloud had been disciplined on several occasions for threatening jail staff and for fighting with other inmates. Id. at ¶ 3. Based on the assessment completed by Mr. Neill, Mr. Blackcloud was given a high medium risk status. Id. at ¶ 4.

In May 2011, Mr. Blackcloud reported being threatened by gang members. Id. at ¶ 5. As a result of this report, Mr. Blackcloud was moved into a more secure housing unit. Id. Mr. Blackcloud was reclassified at that time and was still given a high medium risk status. Id.

On August 26, 2011, Mr. Blackcloud was released on parole. Id. at ¶ 6. His parole was later revoked and he returned to custody on January 7, 2012. Id.

After returning to custody, Mr. Blackcloud's security risk was assessed and he was given a low medium risk status. Id. at ¶ 7. Mr. Blackcloud was then housed at the Mike Durfee State Prison, which is a lower security facility. Id.

While incarcerated at Mike Durfee State Prison, Mr. Blackcloud received mail which was rejected. Id. at ¶ 8. The Department of Corrections maintains a policy which requires mail containing ten or more pages of extra paper unrelated to the correspondence to be rejected. Id. The stated purpose behind this policy is to minimize the burden on staff tasked with having to inspect each piece of mail for contraband, to minimize the time required when conducting cell searches and inventories, to prevent a fire hazard, and to protect the safety and privacy of inmates. Id.

Between February 2012 and November 2012, Mr. Blackcloud filed more than 25 grievances using the prison grievance procedure. Id. at ¶ 9. Mr. Blackcloud was released on parole on January 23, 2013, and remains on parole as of the date of this decision. Id. at ¶ 10.

Mr. Blackcloud's complaint contains six separate claims. (Docket 1). Mr. Blackcloud first claims his security classification was improperly calculated which resulted in him being assaulted. He also claims his security status interfered with receiving his mail and legal paperwork. Id. at p. 7. He alleges his classification was made in retaliation for exercising his right to access the courts. Id. Mr. Blackcloud's second claim alleges defendants' use of his Pennington

County jail reports in calculating his security classification violated his constitutional rights. Id. at p. 8. Mr. Blackcloud also claims he was unable to use the grievance procedures at the jail. Id. Mr. Blackcloud's third and fourth claims allege defendants endangered his life by placing him in maximum security and later placing him in the general population where he was assaulted numerous times. Id. at pp. 9-10. Mr. Blackcloud's fifth and sixth claims assert defendants violated his constitutional rights by interfering with his legal mail which impeded his access to the courts. Id. at pp. 11-12.

Defendants' motion for summary judgment contends the complaint fails to state a claim upon which relief may be granted. (Docket 34). Defendants also argue they are immune from suit under the Eleventh Amendment and are protected by the doctrine of qualified immunity. Id.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence,[3] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Clark v. Kellog, Co., 205 F.3d 1079, 1082 (8th Cir. 2000); see also Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that

---

[3]Included within the evidence are the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R. Civ. P. 56(c).

there is a genuine issue for trial." Commercial Union Ins. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." Id.

## DISCUSSION

**A.     Defendants, in their official capacities, did not deprive Mr. Blackcloud of his constitutional rights.**

Mr. Blackcloud appears to bring a § 1983 action against the defendants in their official and individual capacities. (Docket 73 at ¶¶ 60–61). Insofar as Mr. Blackcloud alleges the defendants violated his constitutional rights in their official capacities, the court finds the § 1983 suit is actually a suit against the State itself. See Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (stating that a suit against a public official in his/her official capacity is actually a suit against the entity for which the public official is an agent).

6

"In general, 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." Parrish, 594 F.3d at 997 (citing Monnell v. New York Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  To impose § 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right.  Monnell, 436 U.S. at 690–91.  Mr. Blackcloud has neither alleged nor demonstrated that an official policy or widespread practice violated his constitutional rights.  Accordingly, Mr. Blackcloud's § 1983 action against defendants in their official capacities is dismissed.

**B.     Defendants are entitled to qualified immunity in their individual capacities because their conduct did not violate Blackcloud's clearly established constitutional rights.**

With respect to Mr. Blackcloud's § 1983 action against defendants in their individual capacities, qualified immunity will function to protect those defendants whose actions were objectively reasonable in light of clearly established constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (" 'The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' ") (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  To determine whether defendants are entitled to qualified immunity, the court will address each of Mr. Blackcloud's constitutional claims as set forth in defendants' brief in support of

7

their motion for summary judgment. (Docket 35). "If the answer [to whether a constitutional right was violated] is no, we grant qualified immunity," and enter summary judgment in favor of defendants. Grayson v. Ross, 454 F.3d 802, 808–09 (8th Cir. 2006).

### 1. Count 1 - Mr. Blackcloud's security classification.

Mr. Blackcloud's first claim revolves around his medium high risk status. Mr. Blackcloud asserts Pennington County jail officials provided information to Jeff Neill, a Case Manager with the South Dakota Department of Corrections, that Mr. Blackcloud had threatened a Pennington County jail staffer. Based on this information, Mr. Blackcloud asserts he was placed in a higher security classification and was denied minimum security work release. Mr. Blackcloud also contends this higher security classification subjected him to assaults and interference with his legal mail and paperwork.

In order to succeed on this claim, Mr. Blackcloud must show that Mr. Neill, while acting under the color of state law, violated his constitutional rights. Mr. Blackcloud "does not have a constitutional right to a particular prison . . . classification." Sanders v. Norris, 153 Fed. Appx. 403, 404 (8th Cir. 2005). "The Due Process Clause does not itself create a liberty interest in a particular prison classification." Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). The court concludes the defendants, and particularly Mr. Neill, did not violate Mr. Blackcloud's constitutional rights and are thus granted qualified immunity on

8

these issues.  Accordingly, the defendants are entitled to summary judgment on Mr. Blackcloud's claim related to his prison classification.

Mr. Blackcloud also asserts his prison classification was made in retaliation for filing a civil action against Don Holloway, a former Pennington County Sheriff.  "A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline."  Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009) (quoting Meuir v. Greene Cnty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007)).  "Merely alleging that an act was retaliatory is insufficient."  Meuir v. Green Cnty. Jail Emps, 487 F.3d 1115, 1119 (8th Cir. 2007).  As noted in defendants' brief, at the time Mr. Blackcloud served the complaint on Mr. Holloway, which he claims is the basis for retaliation, his initial classification had already been set at the state prison.  Mr. Neill did not know of Mr. Blackcloud's pending action at the time Mr. Blackcloud's initial classification was established.  See Docket 36-2 at ¶ 5.  Additionally, it was Mr. Blackcloud's own complaints of being assaulted which resulted in moving him into a more secure area of the prison.  Defendants are entitled to summary judgment on Mr. Blackcloud's retaliation claim.

### 2.  Count 2 - Pennington County jail reports and grievance procedures.

Mr. Blackcloud's second claim alleges defendants violated his constitutional rights by using Pennington County jail reports in calculating his security classification.  (Docket 1 at p. 8).  Mr. Blackcloud also contends he was unable to use the grievance procedures.  Id.

As discussed above, Mr. Blackcloud "does not have a constitutional right to a particular prison . . . classification." Sanders, 153 Fed. Appx. at 404. Futhermore, Mr. Blackcloud fails to indicate how the use of the Pennington County jail reports violated his constitutional rights.  The unopposed facts indicate Mr. Neill contacted the Pennington County jail to obtain disciplinary reports only after Mr. Blackcloud notified Mr. Neill he had been disciplined while being housed at the Pennington County jail.

Mr. Blackcloud also contends he was denied access to the grievance procedure.  Prisoners have a constitutional right to seek redress of grievances as part of their right of access to the courts.  That constitutional right, however, is not compromised by the mere denial of grievances so long as the prisoner has "not allege[d] that he was prohibited from filing grievances altogether." Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (citations omitted).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."

Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)). Denial of access to the grievance process does not, standing alone, amount to a violation of Mr. Blackcloud's constitutional rights. Furthermore, the unopposed facts in this case contradict Mr. Blackcloud's claims. Mr. Blackcloud's complaint asserts he was unable to utilize the grievance process beginning in December 2011. However, Mr. Blackcloud was on parole from August 2011 until January 2012. (Docket 36 at ¶ 6). Since his parole was revoked and Mr. Blackcloud returned to prison in January 2012, he has "filed more than 25 various Informal Request Resolutions and Administrative Remedy Requests." (Docket 36-1 at ¶ 11). The court finds defendants are entitled to summary judgment on this claim.

**3. Counts 3 and 4 - Failure to protect.**

Mr. Blackcloud's third and fourth claims assert defendants placed his life in danger by housing him in maximum security and later placing him in the general population where he was assaulted on numerous occasions. (Docket 1 at pp. 9-10). Mr. Blackcloud frames these claims as failure to protect claims. Id. at p. 10.

> To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, he must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the inmate must show that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that

11

> a substantial risk of harm exists, and he must also draw the inference.

Davis v. Scott, 94 F.3d 444, 446 (8th Cir. 1996) (internal quotation marks and citations omitted).

Mr. Blackcloud claims defendants failed to protect him by placing him in the general population and by housing him in a cell with an inmate who had assaulted another inmate. Mr. Blackcloud does not claim the inmate previously assaulted him. An inmate's liberty interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The conditions described by Mr. Blackcloud are not atypical of ordinary prison life. Mr. Blackcloud failed to show how these conditions created a significant hardship. The facts indicate Mr. Blackcloud was moved into protective custody after being threatened by gang members. (Docket 36 at ¶ 5). There are no facts supporting the conclusion that prison officials knew of and disregarded an excessive risk to Mr. Blackcloud's safety. The unopposed facts demonstrate Mr. Blackcloud, after having his parole revoked, requested to be housed in general population. (Docket 36-1 at ¶ 6). The court finds defendants are entitled to summary judgment on these claims.

### 4.  Counts 5 and 6 - Legal mail and access to the courts.

Mr. Blackcloud's fifth and sixth claims assert defendants violated his constitutional rights by interfering with his legal mail which, he alleges, impeded his access to the courts involving another civil case, CIV 10-5090-JLV.  (Docket 1 at p. 11).  Mr. Blackcloud claims Stephanie Blackcloud, his power of attorney, attempted to mail him two boxes of documents which included copies of documents from his other civil action (CIV 10-5090-JLV).  Id.  After the prison received the boxes of documents, Mr. Blackcloud states he got a notice from the mailroom indicating he had received mail in violation of the policy because more than ten sheets of extra paper unrelated to the correspondence were contained in each box.  Id.

The unopposed facts indicate the boxes were rejected in accordance with Department of Corrections policy because the boxes "contained ten or more pages of extra paper unrelated to the correspondence."  (Docket 36 at ¶ 8).  An affidavit provided by Associate Warden Susan Jacobs says the Department of Corrections maintains a policy that inmates may not receive " 'more than ten (10) sheets of extra paper unrelated to the correspondence itself.' "  (Docket 36-1 at ¶ 9).  "The purpose of this regulation is . . . to protect the staff and inmates and to use [prison] resources most effective[ly]."  Id.  Because "each piece of mail must be inspected, limiting the number of pages decreases the burden on the staff.  Moreover, there are restrictions on the amount of personal property an

13

inmate may have in his cell in order to eliminate fire hazards, decrease the amount of time it takes to perform security checks and cell inventories, and to protect the privacy of individual inmates." Id. "When an inmate receives correspondence that violates this regulation, the inmate is offered the opportunity to have the correspondence sent out at his expense or have the correspondence destroyed." Id. at ¶ 10.

The overriding claim made by Mr. Blackcloud alleges he was denied meaningful access to the court in his other civil case (CIV 10-5090-JLV) as a result of the way defendants handled his mail.

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007). "Actual injury" requires a "demonstrat[ion] that a nonfrivolous legal claim had been frustrated or was being impeded." Lewis v. Casey, 518 U.S. 343, 353 (1996).

The action, CIV 10-5090-JLV, which serves as the basis for Mr. Blackcloud's claims was dismissed on summary judgment. (CIV 10-5090-JLV, Docket 170). Mr. Blackcloud made multiple filings in the case, including filing numerous responses and affidavits to counter the motions for summary judgment. Id. at Dockets 133, 139, 144, 145. Mr. Blackcloud has not established any "actual injury" related to this claim nor shown how his other civil

case was impeded.  Defendants are entitled to summary judgment on these claims.

**C.     Injunctive Relief**

Mr. Blackcloud's claim for injunctive relief is moot.  Mr. Blackcloud complains about the South Dakota Department of Corrections using incident reports from the Pennington Count jail in evaluating a prisoner's security risk.  (Docket 1 at p. 13).  Mr. Blackcloud was released on parole on January 23, 2013.  (Docket 36 at ¶ 10).  Because Mr. Blackcloud is no longer an inmate at Mike Durfee State Prison, his claim for injunctive relief is moot.  See Zajrael v. Harmon, 677 F.3d 353, 355 (8th Cir. 2012) (finding prisoner's request for injunctive relief related to policies or practices of the facility moot because the prisoner was no longer housed at the facility).  Mr. Blackcloud's request for injunctive relief is denied at moot.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 34) is granted as to all claims in plaintiff's complaint.

IT IS FURTHER ORDERED that plaintiff's complaint is dismissed with prejudice.

Dated June 9, 2014.

                                            BY THE COURT:
                                            /s/ *Jeffrey L. Viken*
                                            JEFFREY L. VIKEN
                                            CHIEF JUDGE